WINDHAM PROVIDENT INSTITUTION, Ex parte. See Case No. 6,588.

---

## Case No. 17,868.

### WINDSOR v. WHITING.

[10 Hunt, Mer. Mag. 175.]

District Court, D. Massachusetts. Dec., 1843.

ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—SUBSEQUENT BANKRUPTCY OF ASSIGNOR.

[A debtor made, in 1838, an assignment for the equal benefit of all his creditors, to which assignment five creditors became parties before the debtor was decreed a bankrupt under the law of 1841, which prohibited preferences. *Held*, that the assignment could not be sustained in favor of the creditors generally, or in favor of those who became parties before the bankruptcy decree.]

This was a summary proceeding in equity, instituted by [Henry Winder] the assignee of Nathaniel Blake, a bankrupt, to recover of the respondent [William Whiting] a fund amounting to about $3,000, which had been collected by him under an assignment made to him by Blake, for the benefit of his creditors, December 10, 1838, according to the provisions of the statute of April 15, 1836. Only five creditors had become parties to this assign-

ment, and no dividend had been paid, when, on the 20th of January, 1843, Blake filed his petitions in bankruptcy, but afterwards a number of other creditors signed the instrument.

Upon these facts, it was contended, for the respondent, (1) that the assignment was good at common law; (2) that, if Whiting, as assignee, held anything, he held for the trusts declared in the assignment; (3) that all creditors had a right to become parties to the assignment at any time before the final dividend; (4) that the assignee in bankruptcy had no rights beyond those of the bankrupt to defeat the assignment.

SPRAGUE, District Judge, held it clear that the assignment was not valid under the statute of 1836, which had been repealed before the instrument was made. The question, then, was, was it good at common law? Now, it was clearly settled in this state that, in case of an assignment to trustees for creditors, any creditor not a party thereto might attach the surplus, and so defeat the distribution according to the trusts. Therefore, the second and third propositions of the respondent fell to the ground. Then, as to the fourth proposition, the assignee in bankruptcy acted for the creditors, and for their benefit he had a right to follow property conveyed away by the bankrupt contrary to their legal rights. And, further, he took all their rights in that regard by operation of law, and therefore those creditors who executed the assignment after the bankruptcy could not take any part of the fund thereby. But how were those who executed the instrument before the decree of bankruptcy to be dealt with? It was contended that they should be paid in full, to the exclusion of all who subsequently became parties. This assignment, intended to derive all its efficacy from the statute of 1836, it was attempted to sustain by the common law, in order to carry into effect the intention of the parties. Now, the statute of 1836 prohibited preferences. It was the intention of the parties that there should be no preferences, and that all creditors should have a right to come in at any time before the final dividend. To cut off the subsequent signers, and give the whole fund to the five who had previously signed, would be to defeat the intention of the parties, by the means which were to be invoked for the purpose of effectuating that intention. Again, the bankrupt law prohibits preferences. Yet it was contended that it was to have such a construction and operation given to it as to create a preference for these five creditors, and exclude all others, as well those who signed subsequently as others. By this means the intention of the parties and of the bankrupt law were both to be defeated. An assignee, under the insolvent law of 1838, if it had continued in operation, would have defeated this conveyance; and the assignee, under the bankrupt law, had as extensive rights as an assignee under that statute would have had.